# CHARLESTON.

### WHITE *et al. v.* WHITE *et al.*

Submitted February 8, 1911.    Decided March 8, 1913.

1.  DESCENT AND DISTRIBUTION—*Advancement—Deed to Son-in-law.*
    A grant of land by the wife's father to the husband during coverture, reciting no consideration, is *prima facie* deemed an advancement to the wife. (p. 145).

2.  SAME—*Advancement—Evidence.*
    W., in his life-time, conveyed land to his daughter's husband, by deed reciting no consideration. Parol evidence offered to rebut the presumption of advancement and to prove purchase, *held* insufficient for that purpose. (p. 145).

Appeal from Circuit Court, Logan County.

Bill by James A. White and others against A. B. White and others. Decree for plaintiffs, and defendants Hattie Glover and Addie Riffe appeal.

*Affirmed.*

*Payne & Payne* and *Berkeley Minor, Jr.,* for appellants.

*Chafin & Bland, Lilly & Shrewsbury, W. L. Ashby* and *R. R. Smith,* for appellees.

Lynch, Judge:

For the third time this case is here upon appeal (64 W. Va. 30, 66 W. Va. 79.) Excluded from participation in the partition of the real estate of which their grandfather, James M. White, died seized and possessed, Hattie Glover and her sister, Addie Riffe, appeal. The inquiry now is whether a conveyance by White to John Riffe, appellants' father, operated as an advancement to their mother, Minerva, a daughter of the grantor, thereby denying further right to share in his real estate except by compliance with § 13, ch. 78, Code 1906, now impossible because of conveyance thereof by Riffe to one not a distributee of the White estate.

The deed to Riffe is brief, and crudely drawn, not even reciting a consideration. The presumption thence arising is that the land conveyed was intended by the grantor as an advancement to his daughter. *Lockhard* v. *Beckley,* 10 W. Va. 87; *Kyle* v. *Conrad,* 25 W. Va. 760, 776; *McClintock* v. *Loisseau,* 31 W. Va. 865, 869; *McClanahan* v. *McClanahan,* 36 W. Va. 34; *Roberts* v. *Coleman,* 37 W. Va. 143; *White* v. *White,* 66 W. Va. 79; *Arnold* v. *Barrows,* 1 P. & H. 1; *Watkins* v. *Young,* 31 Grat. 84; *Peale* v. *Thurmond,* 77 Va. 753; *Bruce* v. *Slemp,* 82 Va. 352; *McDearman* v. *Hodnett,* 83 Va. 281. The authorities cited, however, also hold that evidence is admissible to rebut the presumption, and to show either an absolute gift to the grantee or purchase by him. Appellants, being so advised, introduced evidence with the view of proving a purchase of the land by their father.

For this purpose, they procured the testimony of several witnesses, among them their father, whose competency was

challenged.· The latter testifies that White, the grantor, find-ing himself financially unable to pay the balance then (1870) due on the purchase money for the land, a part of which was conveyed by him to Riffe, agreed with the latter and White's sons that if they would aid him in meeting this obligation he would convey them severally parts of the· land proportionate to the money so advanced; that, pursuant thereto, they moved upon the land, cleared and improved it, and cut and sold timber, the proceeds of which White collected and was directed by Riffe to apply in discharge of the indebtedness; and that thereafter, in 1885, as shown by the deed, White conveyed him the land mentioned. The other witnesses testify to conver-sations with White relating to work and labor on the land by his sons and Riffe, and to his conveyances to Riffe and the sons. They say White told them what lands he intended to convey to each one, and that the lands actually conveyed were the lands so designated. They were examined in 1910. The agreement and conversations referred to occurred between 1870 and 1875, so far as any dates are fixed therefor. Some of the witnesses re-fused to state definitely the time or place of the conversations, while others, with apparent alacrity, fixed dates, places and cir-cumstances. None of them state when the work was performed. Nor does Riffe venture to state with any degree of certainty the amount of money paid by him, the value of his work, or the amount due him from White. He does fix the value of the land conveyed at about $400, and White's indebtedness to him on account of labor, timber and other items between $1100 and $1300, in consideration of which he says the land was conveyed. This aggregate is composed of cash received by Riffe for timber cut from the lands and cattle raised thereon, the proceeds of which White collected, his share of partnership accounts be-tween them, and other items not definitely stated or known.

Upon the first appeal (64 W. Va. 30), this Court passed upon and discussed at length testimony of the same import and effect as that on which appellants now rely to show pur-chase, holding it insufficient to establish an absolute gift of land by White to his son Albert. True, the legal title to the land claimed by Albert as a gift still remained vested in the father at his death, being part of the tract of which partition is now

sought. Here, the title vested in Riffe, by virtue of White's deed to him. But that is immaterial, in determining the probative value of the same testimony by the same witnesses. Its present purpose is the rebuttal of the legal presumption of advancement, and to establish a purchase by the grantee. To have this effect, it must be at least reasonably certain and definite. But it lacks both certainty and definiteness. It did not satisfy the mind and conscience of the trial judge, who probably knew the witnesses, their character, reputation, and credibility. Its verity is doubtful. Lapse of time—from thirty-five to forty years—obscures recollection, clouds memory, thus, it may be, causing one to believe events as occurring which in fact did not occur. Besides, this Court gives weight and efficacy to the finding of a circuit court exercising equitable jurisdiction, and will not disturb the finding unless manifestly wrong. *Naughton* v. *Taylor,* 50 W. Va. 233; *Shaffer* v. *Shaffer,* 51 W. Va. 126; *Wolfe* v. *Bank,* 54 W. Va. 689; *Wallace* v. *Douglass,* 58 W. Va. 102; *Bank* v. *Thompson,* 63 W. Va. 196.

It is contended that the proof detailed tends to rebut the legal presumption arising from the deed, and thereby to show a purchase by Riffe. Yet the testimony of appellants' witness Perry is, in effect, to the contrary. He testifies in chief that White, in a conversation with him, said, in substance, that the land conveyed to Riffe was "Minerva's part" of his land. His description thereof was that it begun "at the lower end of the bottom below John Riffe's house and extended to the big mulberry tree up on the Right Hand Fork." This description identifies the land actually conveyed as that to which White referred. Besides, Perry says it is the same land mentioned in the conversation, repeating that White told him it was Minerva's part of his land. Perry also says White told him that, while the land conveyed "as Minerva's part was not fit for farming purposes, John Riffe liked to raise stock, and it would be an excellent stock farm." It is true, White also said to the witness that Riffe had paid on the indebtedness about $1100; yet that statement must be considered in connection with the other fact that, if an advancement, Minerva had received an acreage manifestly in excess of her proportionate share, there being seven children who claim as distributees, to two of whom, Lewis C.

and James N., the father had, at the time of the Riffe deed, conveyed 50 acres, treated as advancements.

The circuit court did not, nor do we deem it necessary to, rule upon the competency of John Riffe to testify as to conversations and transactions with White; for his testimony, when read, as it was, with that of other witnesses, is still insufficient to establish that for which it was offered, namely, to rebut the presumption of advancement.

Our conclusion, therefore, is that the evidence does not warrant reversal of the decree of which appellants complain.

Decree affirmed. *Affirmed.*