[No. 19639. *En Banc.* August 4, 1926.]

VERA FAY COLEMAN, *Appellant,* v. GERTRUDE CRAWFORD et al., *Respondents.*[1]

[1] INFANTS (29)—JUDGMENT (236-1)—CONCLUSIVENESS—BAR—PRO- BATE COURTS—FINAL ORDER OF DISTRIBUTION. The final order of the distribution of an estate as the separate property of the father of a minor daughter, unappealed from, is conclusive on the minor, duly represented by guardian *ad litem,* and precludes a subsequent claim on her behalf that it should have been dis- tributed as community property.

[2] SAME. In such a case, it is immaterial that the same person was appointed as guardian *ad litem* of a minor half-brother of the daughter, whose interest was adverse to hers, upon the is- sue as to the separate or community character of the property, where there was no fraud or collusion.

Appeal from a judgment of the superior court for Klickitat county, Kirby, J., entered July 16, 1925, upon findings in favor of the defendants in an action to quiet title, tried to the court. Affirmed.

*McMaster, Hall & Schaefer,* for appellant.

*Brooks & Brooks,* for respondents.

BRIDGES, J.—The appellant is the daughter of Hiram I. Coleman, deceased, and his first wife, Pearl Coleman, deceased. The respondent Gertrude Craw- ford was the second wife of Hiram I. Coleman, and the respondent Clarence I. Coleman is the son of Hiram I. Coleman, deceased, and Gertrude Coleman, now Ger- trude Crawford. Hiram and Pearl were married in January, 1900, and Pearl died in 1903. In February, 1905, Hiram married Gertrude, and died in March, 1908, his heirs being Gertrude, his widow, Clarence, his son, and Vera, his daughter. No administration was ever had upon the estate of the first wife. After

¹Reported in 248 Pac. 386.

Hiram's death, letters of administration were issued upon his estate, and in the petition for letters of administration the real estate here in controversy was described as the community property of Hiram and Pearl. The inventory later filed listed the property as his separate property. A guardian *ad litem* was appointed by the court to represent the two children, who were minors, and final account and petition for distribution were presented in January, 1910. Before the account was approved and the distribution made, in August, 1910, the guardian *ad litem* made an investigation and acquiesced in the finding that the real estate was Hiram's separate property, and the court so distributed it. No appeal has ever been taken from that decree of distribution. This action was begun in March, 1923, seeking to have the title quieted in the appellant to an undivided two-thirds interest in the real property, based upon the fact that the property was community property of Hiram and Pearl Coleman, having been paid for during their marriage, and that therefore the appellant was entitled to one-half thereof, as the heir of her mother, and to one-third of her father's half. The defense to the action was that the title had become fixed by reason of the probate decree and that the matter was *res judicata.*

[1] With the decision of the trial court sustaining this defense, we must agree. It has been held that the superior court, sitting in probate, has full jurisdiction to try the title to land, if that question is involved and the parties have been properly brought before the court. *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42. And a decision of the court on that matter is as binding as any judgment or decree entered in any other proceeding. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *State ex rel.*

*Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Manning v. Alcott,* 137 Wash. 13, 241 Pac. 287.

The appellant, however, denies the applicability of this rule by asserting that no issue of title was tried between the appellant and her father's estate, and that she did not appear in the settlement of that estate as an individual, but only as an heir of her father. Whether, if that situation were the one which obtains here, the result contended for by the appellant would be the correct one or not, it is unnecessary, as we view it, to determine in this action, for the reason that the record does not justify holding that the appearance of the appellant in the probate of her father's estate was for such a restricted purpose as that alleged, or that the issue determining that case did not involve the very question raised by the appellant's complaint. The appellant was properly served and properly brought into the probate proceeding. She there appeared by a guardian *ad litem,* and, giving full faith and credit to the decree made by the probate court, it appears that in that action the very question was determined as to whether this property was Hiram's separate property or the community property of Hiram and Pearl, the decree stating:

"   .  .  .   the residue of the property belonging to said estate consists of the following real estate, which was erroneously alleged to be community property (the allegation being that it was the community property of Hiram and Pearl), but which appears from the record title and the best evidence obtainable to be separate property of the deceased."

Then follows a description of the real estate here in controversy.

The court having the authority to determine that very question, and it being the question which was

raised in the proceeding, the court exercised that authority and determined the question. Whether the appellant might have appeared only as an heir of her father, the fact is that she appeared by her guardian *ad litem* in her individual capacity, and there was tried out the question as to the nature of this property and that question was determined adversely to her interest. It was decided in *State ex rel. Keasal v. Superior Court, supra,* in which the prior case of *In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593, was reversed, that, in a probate proceeding to settle an account and distribute an estate, the court has jurisdiction to determine adverse claims to the property of the estate, and, in the absence of an appeal, such a decree, making a determination as to the nature of the property and as to its manner of distribution, is binding and conclusive. In any probate case, it is the privilege and duty of the court having jurisdiction of the matter to find and adjudge who are the heirs and to distribute the property of the estate to those heirs. Before any distribution can be properly made, it is necessary for the court to also determine what property belongs to the estate. Necessarily involved in the finding is a determination whether the property belongs entirely to the estate, or in part to the estate and in part to someone else. If that someone else claims an interest in the property, and he voluntarily comes into court, or is brought in, and an issue is raised, as was done here, the judgment becomes just as binding as if it had been made in an independent proceeding.

[2] At the oral argument, appellant raised the question that the probate court erred in appointing one person as the guardian *ad litem* for the two minors, because their interests were adverse and conflicting. This question is not presented in the briefs, nor have any authorities been cited to us concerning it.

It is unquestionably true that the interests of the minors were, at least to some extent, adverse. If the property involved here was to be held to be community property, then the appellant would inherit from her mother, and there would only be an undivided half interest to be distributed to the heirs of the deceased father. On the other hand, if the property was the separate property of the deceased father, appellant would receive a less, and the other minor a greater, interest.

It may be conceded, that it would have been better had the probate court appointed a guardian *ad litem* for each of the minors. But it is our opinion, that the appointment of one guardian for the two children did not deprive the court of jurisdiction to determine whether the land in question was the separate property of the deceased father or the community property of that person and the deceased mother. A guardian *ad litem* is only required to act faithfully and honestly in the interests of his ward or wards. He is not required to present to the court alleged facts which he does not believe exist. In cases of this character, it must always be remembered that the interests of minors are not only represented by the guardian, but also by the court. In a proceeding like this, we believe the general rule is that the judgment attacked will not be vacated or set aside, except for want of jurisdiction in the court, or for fraud or collusion in obtaining the judgment. A lawful judgment of a court having jurisdiction of the cause is as conclusive upon an infant as upon an adult.

In the case of *Howell v. Howell,* 77 Ore. 539, 152 Pac. 217, the court said:

"Amy N. Howell (the mother and guardian *ad litem* of a minor child) had an interest in the subject-matter of the partition suit, and the appointment of some

other person as guardian *ad litem* might have been better; the mother, however, acted in the capacity of guardian *ad litem* with the permission and approval of the judge, and the results ought not to be less binding unless there was fraud or collusion. . . . Where the court has complete jurisdiction of the subject and of the parties, a decree rendered against an infant defendant is as valid and effectual as if taken against an adult, provided there is no evidence of fraud or collusion.''

In the case of *Ivey v. McKinnon*, 84 N. C. 651, it was held that, if in a partition proceeding the interest of a guardian is adverse to that of the infant, the decree will not on that account be disturbed, unless fraud or collusion be established. See, also, *Parish v. Parish*, 175 N. Y. 181, 67 N. E. 298.

In 31 C. J. 1136, § 285, after saying that where there are two or more infants, whose interests are conflicting, guardians should be appointed for each, it is announced that

"While the holding of an adverse interest to the infant may be ground for the revocation of the appointment, and may constitute the appointment erroneous, it has been held that the error is not jurisdictional, and that the judgment or decree is not subject on that ground alone to be avoided, in the absence of fraud or collusion; . . ."

Nor is there any evidence tending to indicate that the guardian *ad litem* abused his trust, or that any fraud or collusion entered into the proceeding which resulted in the probate decree. In the absence of a showing to the contrary, we must presume that the guardian acted in the utmost good faith in behalf of both of his wards. The mere fact that the minors had adverse interests does not even tend to show that there was any fraud or collusion.

The probate court having jurisdiction of the minors and the subject-matter, and there being no fraud or collusion, its decree was as binding upon the infants as it would have been had a guardian been appointed for each of them.

The matter here sought to be litigated being the same that was litigated in the probate proceeding, the trial court was right in refusing to give appellant any relief. The judgment is affirmed.

TOLMAN, C. J., FULLERTON, HOLCOMB, ASKREN, MAIN, and MITCHELL, JJ., concur.